**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| CENTRAL ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: CV-12-190 |
| vs. ) | |
| ) | |
| CROP PRODUCTION SERVICES, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**CROP PRODUCTION SERVICES, INC.'S OBJECTION TO QBE INSURANCE
CORPORATION'S MOTION TO INTERVENE**

COMES NOW Defendant/Counter-Plaintiff, Crop Production Services, Inc. ("CPS"), by and through counsel, and objects to QBE Insurance Corporation's ("QBE") Motion to Intervene. QBE's Motion should be denied because, inter alia, (1) QBE's Motion to Intervene is not timely; (2) QBE's insurance coverage issues do not share common questions of law or fact with the pay/lien dispute or the claims of construction defect and poor workmanship pending in the underlying action; (3) allowing QBE to intervene will impose an undue burden and undue prejudice on the parties and the jury, and will appreciably complicate, expand and further delay the resolution of the case; (4) allowing QBE to intervene will likely create a conflict of interest between it and counsel it retained to represent Central Associates; and (5) intervention by QBE would create a risk of the existence of liability insurance coverage being revealed to the jury. In support of this objection, CPS sets forth as follows:

**I.     INTRODUCTION**

This lawsuit arises out of the construction of a fertilizer warehouse in Summerdale, Alabama (hereinafter referred to as "the warehouse"). CPS entered into a contract with

Plaintiff/Counter-Defendant, Central Associates, Inc., in or around November of 2010 wherein Central Associates agreed to serve as the general contractor for the warehouse. Construction of the warehouse was completed in or around May of 2011.

On or about October 19, 2011, Central Associates recorded a materialman's lien against property owned by CPS upon which the warehouse is situated. On March 15, 2012, Central Associates filed suit alleging that CPS failed to pay in full for Plaintiff's construction services. (Doc. 1.) Central Associates' Complaint includes claims for (1) violation of Alabama's Prompt Pay Act; (2) breach of contract; (3) work and labor done; and (4) open account. (*Id*.) Central Associates claims that it is owed substantial sums in excess of the original contract amount for work that it contends was performed pursuant to change orders. (*Id*.)

CPS filed an Answer and Counterclaim on April 27, 2012, denying the material allegations of Central Associates' Complaint and asserting claims against Central Associates relating to the invalid and unenforceable materialman's lien, and the poor workmanship and improper construction of the warehouse. (Doc. 8.) The initial Counterclaim asserted causes of action for (1) declaratory judgment; (2) slander of title; (3) breach of contract; and (4) breach of warranty. (Doc. 8.) CPS has since amended its Counterclaim to assert additional claims of (5) negligence, and (6) wantonness. (Doc. 40.) QBE retained counsel to defend Central Associates against CPS's counterclaims under a reservation of rights. (Doc. 37.)

On January 29, 2013, QBE filed its Motion to Intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. (Doc. 37.) QBE is seeking permission to intervene in this cause "in order to clarify coverage issues concerning the liability insurance policy which QBE issued to Plaintiff/Counterclaim Defendant, Central Associates." (*Id*.) QBE's Motion asserts that it wishes to participate in discovery, and to submit special verdict forms and interrogatories to the jury. (*Id*.)

For the reasons set forth herein, QBE's Motion to Intervene is due to be denied.

## II.   STANDARD OF REVIEW

Rule 24(b)(1) of the Federal Rules of Civil Procedure, which provides an avenue for permissive intervention, states, in relevant part: "On timely motion, the court may permit anyone to intervene who…has a claim or defense that share with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  District courts have the sole discretion to determine whether a proposed intervenor's claims share common questions of law and fact with the underlying claims.  *See Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1313 (11th Cir. 2005)(holding that district court did not abuse its discretion in determining that liability insurance coverage dispute did not share common questions of law or fact with underlying action).  Even if a motion seeking intervention is timely and the intervenor has met the "common question of law or fact" requirement, it is still within the district court's discretion to refuse to permit intervention.  *See Purcell v. BankAtlantic Fin. Corp.*, 65 F.3d 1508, 1513 (11th Cir. 1996)(holding that district court did not abuse its discretion in refusing to allow intervention).

## III.   ARGUMENT AND AUTHORITY

The Court should deny QBE's Motion because it is not timely; the coverage issues raised in QBE's proposed Complaint in Intervention do not share common questions of law or fact with the underlying dispute; allowing QBE to intervene will impose an undue burden and undue prejudice on the parties and the jury, and will appreciably complicate, expand and further delay the resolution of the case; the intervention would create a conflict of interest; and the intervention would create a risk of disclosing insurance coverage to the jury.  These arguments will be more fully discussed below.

### A.     QBE's Motion to Intervene is Untimely.

QBE's Motion to Intervene is not timely, and QBE has provided no explanation for its delay in seeking intervention. As stated above, Central Associate's Complaint was filed on March 15, 2012, and CPS's Answer and Counterclaim was filed on April 27, 2012. QBE, however, did not file its Motion until January 29, 2013, eleven months after the original Complaint was filed and nine months after CPS's Counterclaim was filed. The parties have filed Answers to the claims asserted against them, they have met and filed the parties' planning report, the scheduling order has been entered, and discovery has been ongoing for many months.

As such, QBE's Motion is due to be denied. *See Meadors v. Knauf Fiberglass*, 2005 WL 2290318, *3 (M.D. Ala. Sept. 20, 2005)(holding that insurer's motion to intervene filed seven months after complaint was untimely and that the existing parties would be prejudiced by intervention where answers had been filed, the parties' planning meeting had been held, a scheduling order had been entered, and discovery had been ongoing for several months).

Just as in *Meadors*, the parties will be prejudiced by QBE's untimely intervention. Accordingly, QBE's Motion to Intervene is due to be denied.

### B.     QBE's Insurance Coverage Issues Do Not Share Common Questions of Law or Fact With the Underlying Dispute.

The insurance coverage issues presented in QBE's Complaint in Intervention do not share any common questions of law or fact with the underlying pay/lien dispute or the claims alleging poor workmanship and construction defect. QBE's Motion fails to assert any explanation or argument that would indicate otherwise. QBE's Complaint in Intervention identifies the following coverage issues/questions:

> a.     What portion of the damage claimed by CPS, if any, is the result of an "occurrence" as defined in the policy;

      b.      What portion of the damage, if any, is to CAI's "work," as defined in the policy, and whether or not such "work" was performed by subcontractor(s);

      c.      What portion of the damage, if any, is to CAI's "product," as defined in the policy;

      d.      What portion of the damage, if any, is to that particular part of property on which CAI or its subcontractors were working and/or which must be restored, repaired, or replaced because CAI's "work" was performed incorrectly on it;

      e.      What portion of the damage, if any, is to property other than CAI's work; and

      f.      What portion of the jury's verdict, if any, is for slander of title, purely economic damages, the alleged failure to pay vendors, and/or other non-covered /excluded claims.

(Doc. 37-1 at ¶10.) Not a single one of the coverage questions presented by QBE are common to the underlying claims. In fact, the answer to the above presented coverage questions would have no effect on either Central Associate's potential liability to CPS, or CPS's potential liability to Central Associates. As such, it is clear that QBE cannot meet the "common question of law or fact" requirement set forth in Federal Rule of Civil Procedure 24(b)(1).

      The Eleventh Circuit and its district courts have made clear that issues of liability insurance coverage do not share common questions of law or fact with the underlying claims for which insurance coverage may be sought. *See Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d at 1312 (where insurance coverage issues are irrelevant to the issue of liability in an underlying action, no common questions of law or fact exist); *Reed v. Barnett*, 2010 WL 5239249, *2 (S.D. Ala. 2010)(when coverage questions can "be resolved independently of how any question in [the underlying] case is resolved," no common questions of law or fact exist); *Meadors*, 2005 WL 2290318 at *3 (resolution of the insurance carrier's coverage issues "would require separate findings of law and fact" from the issues in the underlying action).

QBE has not cited to a single legal authority that supports its position that it should be allowed to intervene in this case to participate in discovery, and submit special verdict forms and interrogatories to the jury. QBE cites only to the Alabama Supreme Court case of *Universal Underwriters Ins. Co. v. East Central Alabama Ford-Mercury, Inc.*, 574 So. 2d 716 (Ala. 1990) in support of its request for intervention. In *Universal Underwriters*, however, the Alabama Supreme Court affirmed the trial court's refusal to allow an insurer to intervene in an underlying action to address insurance coverage issues. *Id*. at 727. The Court held that an insurer did not have a "direct, substantial and protectable interest" that would allow it to intervene as of right, and that the trial court did not abuse its discretion in refusing to allow permissive intervention. *Id*. at 723. The Alabama Supreme Court did set forth an alternative procedure whereby insurance coverage issues could be addressed through a bifurcated trial. *Id*. at 724-727. QBE, however, specifically states in its Motion to Intervene that it is not seeking to adhere to the bifurcation procedures set forth in *Universal Underwriters*. (Doc. 37, ¶6.) QBE's failure to request the bifurcated trial procedure is, under Alabama law, grounds for denial of its request for permissive intervention in and of itself. *See Universal Underwriters Ins. Co. v. Anglen*, 630 So. 2d 441 (Ala. 1993).

QBE also ignores an abundance of Alabama cases wherein it was held that insurance carriers were properly denied attempts at intervention for the purpose of submitting special interrogatories and verdict forms to address coverage issues. *See Employer Mut. Cas. Co. v. Holman Bldg. Co., LLC*, 84 So. 3d 856 (Ala. 2011)(trial court did not abuse its discretion in refusing to allow insurer to submit special verdict forms or interrogatories to the jury); *Farmers' Ins. Exch. v. Raine*, 905 So. 2d 832 (Ala. Civ. App. 2004)(affirming trial court's denial of insurer's request to intervene for purpose of submitting special verdict forms and

interrogatories); *Mutual Assur. Inc. v. Chancey*, 781 So. 2d 172 (Ala. 2000)(trial court did not abuse its broad discretion by denying insurer's motion to intervene).

Thus, Federal and state courts have consistently denied insurance company attempts to intervene for the very purpose for which QBE now seeks intervention in this case. This Court should likewise adhere to the practice of denying an insurance company's attempt to interject issues that have no common questions of law or fact with the issues in the underlying case.

> C. **The Injection of QBE's Insurance Coverage Issues Will Significantly Complicate, Expand and Delay the Resolution of this Case.**

QBE's involvement in this case would only further complicate an already complex lawsuit that includes eleven (11) claims and counterclaims involving fairly complicated contracts and subject matter. The claims pending in this case will require the jury to digest technical testimony and information regarding means, methods and techniques implemented in the construction of a fertilizer warehouse. The jury will further be required to wade through complex legal theories and defenses at the trial of this matter. Intervention by QBE will further complicate the issues, confuse the jury and substantially delay the resolution of the claims pending by both Central Associates and CPS, which will substantially prejudice these parties.

If QBE is permitted to intervene, it is highly unlikely that the parties will agree to the special verdict forms or interrogatories, and objections and hearings will likely ensue. In reality, there may well be appeals by one or both sides regarding the verdict forms, interrogatories, and instructions that will be intertwined with potential appeals from the underlying action. Resolution of the insurance disputes, therefore, will ultimately delay the conclusion of this matter by slowing the appeals process. *Restor-a-Dent v. Certified Auto Products*, 725 F.2d 871 (2d Cir. 1984) (stating that undue delay may occur because the insurance company may object to the special verdict form, which would lead to an appeal, and delay the main action). Because of

the potential for delay, complication of the underlying action, and prejudice to existing parties, intervention should be denied.

### D. QBE's Intervention Would Create a Conflict of Interest.

QBE's intervention would create a conflict of interest for the lawyers that QBE retained to represent Central Associates in the underlying action. QBE has admittedly retained counsel to defend Central Associates under a reservation of rights (Doc. 37 at ¶4), and it is clear that QBE's purpose in intervening is to minimize the amount of insurance coverage (or to deny coverage altogether) that it must provide to Central Associates. For this reason alone, QBE's Motion is due to be denied. *See Restor-a-Dent*, 725 F.2d 871 at 877 ("Allowing the insurer to intervene even for limited purposes might, as a practical matter, deter a settlement and may well exacerbate a potential conflict of interest for the attorney furnished by [the insurer] to represent [its insured]."); *Frank Betz Associates, Inc. v. J.O. Clark Const., LLC*, 2010 WL 2375871, *3 (M.D. Tenn. June 4, 2010)(noting that intervention "would create a conflict of interest for the lawyers representing the [d]efendants" under a reservation of rights); *High Plains Co-op. Ass'n v. Mel Jarvis Const. Co., Inc.*, 137 F.R.D. 285, 290-291 (D. Neb. 1991)(recognizing that intervention may result in counsel retained by the carrier being "put in the intolerable position of taking a position that is potentially hostile to the insured").

Since QBE's intervention would create an intolerable conflict of interest that is likely to impede the prospects for settlement of this case, QBE's Motion to Intervene should be denied.

### E. QBE's Intervention Would Increase the Risk Of Disclosing the Existence of Liability Insurance Coverage to the Jury.

Should QBE be allowed to intervene, there is a profound danger that existence of liability insurance coverage could be introduced to the jury. This knowledge would taint the jury and may very likely lead to further delays. *See McGinnis v. United Screw and Bolt Corp.*, 109

8

F.R.D. 532 (E.D. Pa. 1985) (denying petitioner's motion to intervene because it could lead to the disclosure of existence of insurance). This provides further grounds for the Court to deny QBE's attempts to prejudice the existing parties and delay the resolution of this case.

## IV.  CONCLUSION

WHEREFORE, the foregoing premises considered, CPS respectfully requests that this Honorable Court deny QBE's Motion to Intervene.

Respectfully submitted,

*/s/ D. Trice Stabler*
D. Trice Stabler (STABD3501)
tstabler@maynardcooper.com

MAYNARD, COOPER & GALE, P.C.
11 North Water Street
RSA Battlehouse Tower, Suite 27000
Mobile, Alabama 36602

Attorney for Crop Production Services, Inc.

**CERTIFICATE OF SERVICE**

I certify that on February 7, 2013, I electronically filed the foregoing with the Clerk of the Court which will send notification of such filing to:

E.J. Saad, Esq.
Matthew Andrews, Esq.
E.J. SAAD LAW FIRM
6207 Cottage Hill Road
Suite G
Mobile, Alabama 36609
*Attorneys for Central Associates, Inc.*

John W. McClurkin
GALLOWAY, JOHNSON, THOMPKINS,
    BURR & SMITH
106 St. Francis Street
Suite 502
Mobile, Alabama 36602
*Attorneys for Central Associates, Inc.*

Stewart L. Howard, Esq.
Thomas J. Mercado, Esq.
STEWART HOWARD, P.C.
Post Office Box 1903
Mobile, Alabama 36633
*Attorneys for QBE Insurance Corporation*

*/s/ D. Trice Stabler*
OF COUNSEL